Opinion for the Court Pollard, Presiding Judge:
Ali Abdul-Aziz Ali (also known as Ammar al Baluchi) (Ali) is one of the defendants being tried before a military commission at Naval Station Guantanamo Bay, Cuba on charges related to his alleged role in the attacks of September 11, 2001. Some of the charged offenses are capital.
Ali, in three separate matters pending before us, moves to disqualify all judges on this Court for an alleged failure to maintain their independence from the Department of Defense (the "Department"). In a fourth motion, he moves to dismiss the government's pending interlocutory appeal making the same lack of independence argument.[1] The facts underlying each motion are the same.
In 2015, in my capacity as a CMCR Judge, I voluntarily asked that an ethics complaint directed at me be sent to the attention of the applicable ethics office within the Department "for whatever investigation and action, if any, [it] deemed appropriate." The referral then was sent to the Department's Standards of Conduct Office (SOCO).
Ali now argues that by doing this I compromised the entire Court's independence because my actions subjected all *1069 CMCR judges to the Department's ethical supervision. This is so, he says, because ethical supervision allows the Department to control the Court's judges. According to Ali, this results in a loss of judicial independence, creates an appearance of bias, and disqualifies all CMCR judges from hearing his mandamus petitions pending before us in CMCR Case Nos. 18-003, 18-004, and 19-002. Ali asks the Court to waive jurisdiction over these petitions and refer them to the Court of Appeals for the District of Columbia Circuit (D.C. Circuit). In CMCR Case No. 17-003, Ali says that the asserted loss of judicial independence requires the dismissal of the government's pending appeal.
For the reasons that follow, the motions are denied.
I. Background
Ali's motions arise from misconduct allegations directed at me that Omar Khadr made in 2015. Khadr, who pled guilty to war crimes, subsequently challenged his conviction in this Court. I am a member of the panel hearing Khadr's appeal, which is still pending.[2]
Khadr filed multiple motions from 2014 through 2016 asking me to recuse myself or seeking my disqualification. The predicate for the motions can be traced to (1) the fact that I am a civilian judge who serves part-time, as needed, and continues to practice law in my private capacity; and (2) the absence of sufficient statutory infrastructure for the Court in the Military Commission Act of 2009 (MCA), see 10 U.S.C. § 948a et seq ., or elsewhere.
I denied Khadr's motions.[3] Khadr then filed a mandamus petition in the D.C. Circuit seeking a writ disqualifying me for reasons that are unrelated to Ali's motions before the Court. The D.C. Circuit denied the petition. See In re Khadr , 823 F.3d 92, 95-96 (D.C. Cir. 2016).
In his petition brief filed with the D.C. Circuit on November 18, 2015, Khadr alleged that I was engaged in misconduct by "exploiting [my] status as a federal judge ... [to] recruit[ ] clients to [my] law firm." D.C. Cir. 14-1227 Khadr Br. 13 (D.C. Cir. 14-1227, Doc. No. 1584074). I concluded the allegation was unfounded. However, I had an "obligation to protect the Court as an institution." CMCR 13-005 Referral 2 (Nov. 24, 2015) (Referral) App. A. Accordingly, in order to promote public confidence in the integrity and independence of the Court, see United States v. Microsoft Corp. , 253 F.3d 34, 113 (D.C. Cir. 2001), I decided it was necessary for someone other than me to assess Khadr's contention that I was using my judgeship for private gain. I, therefore, referred Khadr's allegation "to the attention of the ethics officers who are responsible for the United States Court of Military Commission Review." Referral 2.
The CMCR is the fifth Article I court of record created by Congress.[4] It is an independent Court. Its decisions are not reviewable by anyone within the Executive Branch. They are appealable only to the D.C. Circuit and, upon a grant of a Writ of Certiorari, to the Supreme Court. 10 U.S.C. § 950(g). The civilian judges report to no one within the Executive *1070 Branch. They can be removed only for cause.[5] The military appellate judges in their capacity as CMCR judges also report to no one in the Executive Branch. They have statutory protection from at will removal by their respective Services. See 10 U.S.C. § 949b(4). In contrast, the CMCR's predecessor was an agency review panel created by the 2006 MCA. Its judges were at will appointees of the Secretary of Defense. See Khadr , 62 F. Supp. 3d at 1316-17.
The MCA has no pay or tenure provisions for the civilian judges. Compare 10 U.S.C. § 950f with 10 U.S.C. §§ 941 - 945 (Court of Appeals for the Armed Forces). There is no statutory provision that provides the CMCR with administrative or staff support. For example, there is no provision for court staff, law clerks, offices, or its own information technology. There is no statutory authority for the Court to have and manage a budget. Thus, by default, this Court must look to the Department when in need of administrative and staff support.
Like the judges on the other Article I courts,[6] CMCR judges must file certain financial disclosures required by the Ethics in Government Act (EGA). However, there is no statute addressing which agency or department should provide support for CMCR judges in this regard or, when necessary, provide them with ethical guidance. By statute, our brother and sister Article I judges file EGA reports with the Judicial Conference. See 5 U.S.C. Appx. §§ 103(h)(1)(B) and 109(8). When in need of ethical advice, judges on the Court of Appeals for the Armed Forces, for example, look to the Administrative Office of the United States Courts (AOC), the same office that provides ethical advice to, and support for, Article III judges. However, the statutory scheme does not specifically include civilian CMCR judges in the class of judges who file their disclosures with the Judicial Conference and whom AOC supports.
In 2014, Judge Silliman of this Court wrote to the Administrative Office "with regard to which agency, the AOC or DOD, would be responsible for providing [CMCR judges] ethics advice and receiving [their] financial disclosure reports." The AOC responded with an opinion in which it concluded the civilian CMCR "judgeships do not meet the definition of 'judicial employee' or 'judicial officer,' [in EGA, 5 U.S.C. Appx. §§ 109(8) and (10) and therefore], Judges Silliman and Pollard should not file their financial disclosure reports with the Administrative Office of the U.S. Courts." By extension, this also meant that AOC would not provide CMCR judges with ethical advice or support when needed.
Also in 2014, the CMCR Chief Judge asked the Secretary of Defense to support amendments to the relevant statutes so that the ethics rules for other Article I civilian appellate judges would be applicable to the civilian appellate judges on our court.[7] This request was repeated in 2016 and remains pending.
*1071 Given AOC's position, in order for someone other than myself to assess Khadr's contention that I was using my judgeship for private gain, I could turn only to the Department's ethics officials. Thus, my voluntary referral was sent to SOCO, which acts on behalf of the Department's General Counsel in his capacity as the Designated Agency Ethics Official.[8] SOCO is the principal source of ethics advice to officials assigned within the Office of the Secretary of Defense where the CMCR resides for administrative purposes.
In an opinion dated December 15, 2015, SOCO concluded that I did not violate any applicable ethical rules. I directed the Deputy Clerk of the Court to file SOCO's opinion on the docket in Khadr's appeal so that it would be available to the parties and the public. CMCR 13-005 Order (Dec. 23, 2015) App. B.
II. Jurisdiction
Ali makes one of his motions in the interlocutory appeal brought by the Government for which we have jurisdiction. See 10 U.S.C. § 950d. The other motions are made in conjunction with pending petitions seeking writs of mandamus. See note 1, infra . This Court has jurisdiction to entertain writs of mandamus "in aid of [our] jurisdiction" under the MCA. See 28 U.S.C. § 1651(a) and 10 U.S.C. § 950f ; In re Al-Nashiri , 791 F.3d 71, 78 (D.C. Cir. 2015). Accordingly, we may hear and decide the motions before us.
III. The Referral to the Department's Ethics Officials Has No Precedential Effect on the Court
Ali argues that the interchange between SOCO and me created a "binding precedent" that subjects all CMCR judges to SOCO's ethical supervision and, therefore, the Department's control. See Ali Br. 9 (CMCR 17-003, Mar. 15, 2019). This, according to Ali, compromised the independence of the entire CMCR Court and requires the disqualification of all its judges because of apparent bias. Id. at 12. He cites no law to support the contention that a voluntary referral and the posting of SOCO's opinion created a precedent binding on the Court.
Only published opinions of this Court adjudicating rights can create precedent binding on the Court. See CMCR Rule of Practice 32(a). See also United States v. Williams , 75 M.J. 663, 667 n. 6 (Army Ct. Crim. App. 2016) ("We find this unpublished opinion neither persuasive nor precedential"); United States v. Taylor , 67 M.J. 578, 580 (A.F. Ct. Crim. App. 2008) ("unpublished opinions [carry] no precedential weight"); United States v. Bolado , 34 M.J. 732, 735 (N.M.C.M.R. 1991) ("Because the decision is unpublished, it is not legal precedent that binds this Court").
CMCR Opinions that have binding precedential force come only from a panel of at least three judges or an en banc panel. See 10 U.S.C. § 950f(a). My referral to SOCO and direction to post the SOCO opinion were not opinions of a panel adjudicating rights. Both were done in my name, and neither had binding precedential effect on the Court as a whole or on any of its judges.
For these reasons alone, Ali's motions fail.
IV. The Referral Did Not Compromise the Court's Independence
What is judicial independence? "[T]he cases speak almost exclusively to *1072 judicial independence from the influence or control of the legislative and executive branches." McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S., 264 F.3d 52, 64 (D.C. Cir. 2001). In the context of Ali's motions, it means that the CMCR judges must be free of the Department's "influence or control" with respect to their judicial decision making. See generally, Khadr , 823 F.3d at 97-98.
The facts and arguments that Ali puts forward fail to demonstrate that voluntarily seeking ethical advice from the only federal government resource available in response to Khadr's allegations compromised my judicial independence and by extension the independence of all other CMCR judges. We begin by noting that our Superior Court has said that supervision or control over a judge requires the power "to play an influential role in the [judge's] substantive decisions." Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd. , 684 F.3d 1332, 1338 (D.C. Cir. 2012). SOCO has no such power.
The civilian CMCR judges, generally, are subject to the statutory and regulatory ethical proscriptions applicable to all Federal employees absent a modification or exemption.[9] It would be better if Congress amended the relevant statutes to provide CMCR judges with an alternative to SOCO, independent of the Department, for ethical guidance and support and for EGA compliance consistent with that applicable to other Article I judges.[10] However, in the absence of such legislation, civilian CMCR judges have no choice but to turn to the Department when the need for ethical advice arises and to comply with EGA financial filing requirements. Doing this in the circumstances set forth in the motions before us does not compromise the independence of any CMCR judge for several reasons.[11]
As SOCO said in its opinion, it provides ethics advice. It has no enforcement powers.[12] More to the point, SOCO may not use its advisory powers "to coerce or, by any unauthorized means, influence" the judicial actions of a CMCR judge, nor may it "censure, reprimand, or admonish a judge ... with respect to any exercise of their functions in the conduct of proceedings" under the MCA. 10 U.S.C. § 949b(b). In other words, the ordinary provision of ethical advice by SOCO does not compromise a judge's independence, and the Department is barred by statute from attempting to use SOCO's advisory powers to compromise the judicial independence of any judge. See Khadr , 823 F.3d at 97-98.
Ali is correct that SOCO, or another component of the Department, could have referred Khadr's allegations to the Department of Justice or a state bar if they concluded the allegations had merit. But, anyone, including the D.C. Circuit, could *1073 make such a referral regardless of whether the allegations had merit. Similarly, anyone could make or refer an accusation of misconduct to the Executive Office of the President in an effort to initiate the removal of a CMCR judge for cause. Thus, contrary to Ali's speculative argument, any ability to refer an allegation of ethical wrongdoing to another part of the government or an attorney disciplinary panel does not give SOCO an ability to influence or control a CMCR judge. Intercollegiate Broad ., 684 F.3d 1332, supports this conclusion.
Intercollegiate Broad. involved whether Copyright Royalty Judges (CRJs) were principal officers for Appointments Clause purposes.[13] Among other things, the Librarian of Congress had the power to "adopt regulations regarding the standards of conduct, including financial conflict of interest..., which shall govern the Copyright Royalty Judges ..." 17 U.S.C. § 802(h). The Librarian had the further power to "sanction or remove a Copyright Royalty Judge for violation of [these] standards of conduct ..." Id. at § 802(i).
The D.C. Circuit said that this, along with other statutory powers that the Librarian had concerning CRJs, did not "seem[ ] to afford the Librarian room to play an influential role in the CRJs' substantive decisions." Intercollegiate Broad. , 684 F.3d at 1338. The Department has no such similar powers with respect to CMCR judges. Even if it did, the D.C. Circuit has held that such authority would not give the Department an ability to influence or control the judicial decision making of CMCR judges. Therefore, a voluntary referral by a CMCR judge seeking ethical advice from SOCO, an agency that has no enforcement powers, does not give the Department "influence or control" over a judge's decision making.
V. There is No Appearance of Bias
Ali make a conclusory argument that the Department's "ethical supervision" of CMCR judges (which does not exist) creates an appearance of bias and this requires disqualification of the entire court. Our Superior Court recently discussed the necessity that "judges must preserve both the reality and appearance of impartiality." In re Al-Nashiri , 921 F.3d 224, 233 (D.C. Cir. 2019) ( Al-Nashiri III ). In addressing the appearance of bias, the D.C. Circuit told us that "when it comes to judicial recusal: judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned." Id. at 234 (internal quotation marks and brackets omitted). This dictate applies with equal force to this Court. See In re Mohammad , 866 F.3d 473, 475 (D.C. Cir. 2017). It, too, is required to protect public confidence in the integrity and independence of Al-Nashiri III , 921 F.3d at 233-34 (citing Microsoft Corp ., 253 F.3d at 115 ).
" '[A]ll that must be demonstrated to compel recusal,' then, is 'a showing of an appearance of bias ... sufficient to permit the average citizen reasonably to question a judge's impartiality.' " Id. at 234 (quoting United States v. Heldt , 668 F.2d 1238, 1271 (D.C. Cir. 1981) ). The test, however, is based on "knowing all the circumstances." Id. at 234.
*1074 The relevant circumstances here are set forth above. The key facts are:
• Khadr made an allegation of misconduct.
• Judge Pollard found it meritless.
• Judge Pollard has a duty "to protect public confidence in the integrity" of the Court.
• Judge Pollard wanted an ethics official to review the allegations and independently assess whether they had merit.
• Previously, the AOC declined to provide ethical support to CMCR judges.
• Judge Pollard voluntarily referred Khadr's allegations to the ethics office that had responsibility for CMCR, the only such resource available to him.
• The referral was sent to SOCO.
• SOCO is an advisory office within the Office of the Secretary of Defense.
• SOCO has no enforcement powers.
• SOCO has no statutory or regulatory authority over Judge Pollard or any CMCR judge with respect to their judicial decision making.
• The Department, directly or through SOCO, is statutorily prohibited from attempting to influence improperly or coerce any CMCR judge.
• SOCO rendered an opinion in which it concluded that with respect to Khadr's allegations Judge Pollard had not violated any ethical rules.
• Judge Pollard directed the Court's Deputy Clerk to post SOCO's advisory opinion to the Khadr docket on the Military Commission website.
"In asking what would cause a reasonable person to doubt a judge's neutrality, [our Superior Court] recognize[d] the somewhat 'subjective character of this ostensibly objective test.' " Al-Nashiri III at 234 (quoting Pepsico, Inc. v. McMillen , 764 F.2d 458, 460 (7th Cir. 1985) ). The D.C. Circuit also has told us to "rely[ ] on [ 28 U.S.C.] section 455, judicial codes of conduct, precedent, and our own judgment as ethics-bound jurists" in making the assessment of what a reasonable person would think. Id.
On the facts before us, it would not appear to a reasonable person that a CMCR judge voluntarily seeking and obtaining ethical advice from SOCO gave the Department any influence or control over any CMCR judge's judicial decisions, or created an appearance of bias. Further, the D.C. Circuit rejected the premise of Ali's argument in Intercollegiate Broad. , 684 F.3d at 1338.
VI. Conclusion
For these reason's Ali's motions are without merit. The motions to disqualify the Court are DENIED .
Opinion for the Court filed by Pollard, Presiding Judge, with whom Hutchison and Fulton, Judges, join.
Attachment
UNITED STATES COURT OF MILITARY COMMISSION REVIEW
BEFORE: POLLARD, PRESIDING JUDGE
UNITED STATES OF AMERICA
v.
OMAR AHMED KHADR
CMCR 13-005
November 24, 2015
Colonel Peter E. Brownback, JA, U.S. Army and Colonel Patrick J. Parrish, JA, U.S. Army, military commission judges.
Samuel T. Morison and Major Justin Swick , USAF, Office of the Chief Defense *1075 Counsel, and Dennis Edney , Law Society of Alberta, Canada, on motions for Appellant Omar Ahmed Khadr.
Brigadier General Mark S. Martins , U.S. Army; and Danielle S. Tarin , on motions for Appellee United States Government.
REFERRAL
POLLARD , Presiding Judge
On the evening of November 18, 2015, I learned that the web site of the law firm with which I am affiliated included the following sentence in my attorney profile: "Also, the Obama administration appointed him to preside in trials involving the detainees at Guantanamo Naval Base in Cuba." Previously, I was unaware of this. I learned about it from a brief that Appellant Omar Ahmed Khadr had filed earlier in the day in the United States Court of Appeals for the District of Columbia Circuit (Dckt. No. 14-1227). The sentence, which incorrectly describes my judgeship, should not have been included in my attorney profile. Upon learning about it, I immediately asked that the sentence be removed. That was done by the opening of business the following morning, November 19, 2015.
I do not know how a reference to my judgeship came to be included in my attorney profile. My relationship agreement with the firm states in part: "The firm will not list your position as judge on our internal or external website or in any marketing or other public materials." I also gave instructions that the firm not refer to my judgeship in any public statement that it might make about me. Given the steps that the firm and I took to avoid this, I assume that whoever added the sentence was unaware that it should not be in my profile.
In his brief, Khadr asserts, "Judge Pollard and his partners are now exploiting his status as a federal judge presiding over cases arising from Guántanamo Bay as a vehicle for recruiting clients to his law firm." Br. at 13. Elsewhere, he says I am "exploiting [my] position as a government official to solicit and earn fees from private clients" and that I am "using [my] government position to solicit clients from around the globe." Khadr Br. at 16. It appears that the basis for Khadr's contentions is the reference in my profile, which even Khadr concedes is incorrect, that I am a military commission trial judge. Khadr Br. at 10.
Misusing a government position to attract private clients is a serious charge. If true, it would evidence improper conduct. Khadr's allegations of misconduct, however, are not true. Notwithstanding this, I have an obligation to protect the Court as an institution. Thus, I have concluded that given the nature of Khadr's allegations, I should bring them to the attention of the ethics officers who are responsible for the United States Court of Military Commission Review for whatever investigation and action, if any, they deem appropriate.
Accordingly, the Clerk of the Court is directed to provide copies of this Referral, Khadr's brief filed in the Court of Appeals, his appendix and, when available, the government's responsive brief and appendix to the Department of Defense General Counsel as the Designated Agency Ethics Official. My law firm and I will cooperate in any inquiry that the Ethics Official may undertake.
FOR THE COURT:
/s/
Edward Loughran
Assistant Clerk of Court
U.S. Court of Military Commission Review *1076 Attachment
UNITED STATES COURT OF MILITARY COMMISSION REVIEW
BEFORE: POLLARD, PRESIDING JUDGE
UNITED STATES OF AMERICA
v.
OMAR AHMED KHADR
CMCR 13-005
December 23, 2015
Colonel Peter E. Brownback, JA, U.S. Army and Colonel Patrick J. Parrish, JA, U.S. Army, military commission judges.
Samuel T. Morison and Major Justin Swick , USAF, Office of the Chief Defense Counsel, and Dennis Edney , Law Society of Alberta, Canada, for Appellant Omar Ahmed Khadr.
Brigadier General Mark S. Martins , U.S. Army; and Danielle S. Tarin , for Appellee United States Government.
ORDER
POLLARD , Presiding Judge
Appellant Omar Ahmed Khadr made complaints concerning my conduct in a brief filed in the United States Court of Appeals for the District of Columbia Circuit (Dckt. No. 14-1227). On November 24, 2015, I issued an order referring those complaints to the Department of Defense General Counsel as the Designated Agency Ethics Official. On December 15, 2015, the Department of Defense Standards of Conduct Office responded to the referral in a document entitled Government Ethics Advice. The Clerk of the Court is directed to post this order, to which a copy of that response is attached, on the docket in the above referenced appeal.
FOR THE COURT:
/s/
Edward Loughran
Assistant Clerk of Court
U.S. Court of Military Commission Review
Attachment
Reply Reply All Forward
Government Ethics Advice
Government Ethics Advice
Vetter, Ruth M SES OSD OGC (US)
To: Pollard, William B III HON OSD USCMCR (US)
Signed by:
Tuesday, December 15, 2015 1:50 PM
Dear Judge Pollard:
Your office provided the DoD Standards of Conduct with a copy of the Referral Order you entered in the case of U.S. v. Omar Ahmed Khadr. The DoD Standards of Conduct Office acts on behalf of the DoD General Counsel in his capacity as DoD Designated Agency Ethics Official as the principal provider of ethics advice to officials assigned within the Office of the Secretary of Defense. We have reviewed the information provided in the Referral Order as well as the Brief of Petitioner Omar Ahmed Khadr.
While the use of a Federal official's government position or title on a private business' website could raise concerns about use of public office for private gain, this does not appear to be the case in the instant situation. Specifically, the inclusion of a reference to your appointment to serve as a judge on the United States Court of Military Commission Review in your attorney profile on your law firm's website does not appear to violate the applicable Standards of Conduct for Employees of the Executive Branch in the circumstances you describe.
*1077 The prohibition on improper use of public office for private gain does provide that, except in specified circumstances, "an employee shall not use or permit the use of his Government position or title or any authority associated with his public office in a manner that could reasonably be construed to imply that his agency or the Government sanctions or endorses his personal activities or those of another." 5 C.F.R 2635.702(b). More generally, the regulation bars improper endorsements, noting "An employee shall not use or permit the use of his Government position or title or any authority associated with his public office to endorse any product, service or enterprise," except in certain limited cases. 5 C.F.R 2635.702(c).
The inclusion by the law firm among your biographical details of the sentence, "Also, the Obama administration appointed him to preside in trials involving the detainees at Guantanamo Naval Base in Cuba," does loosely (albeit inaccurately) refer to your Federal position. The context and circumstances, however, do not appear to imply that the Department of Defense (or the President) sanctions or endorses your personal activities at the firm. Neither does the attorney profile language reasonably suggest that you used your public office to endorse the law firm's services or promote your personal practice. Rather, the sentence appears to have been included among other biographical details and not given special prominence in a manner suggesting its use to endorse your or the firm's professional services. Finally, your effort to avoid any suggestion of endorsement by including language in your relationship agreement with the firm barring them from listing your "position as judge" on their website or marketing materials conclusively indicates that you did not "permit" the use of the reference to your position. It therefore appears your actions regarding the use of your Federal title or position complied with the ethics regulations.
Respectfully,
Ruth M.S. Vetter
Director, Standards of Conduct Office
Office of the General Counsel
Department of Defense 1600 Defense
Pentagon (Room 3E783)
Washington, D.C. 20301-1600
Caution: This message may contain information protected by the attorney-client, attorney work product, deliberative process, or other privilege. Do not disseminate without the approval of the Office of the DoD General Counsel

Ali filed petitions seeking writs of mandamus in CMCR Case Nos. 18-003, 18-004 and 19-002. The government's appeal is CMCR Case No. 17-003.

Khadr's appeal is held in abeyance pending further order of this Court. See CMCR 13-005 Order (Oct. 27, 2015).

See Khadr v. United States , 62 F. Supp. 3d 1314 (CMCR 2014) ; CMCR 13-005 Orders (Nov. 13, 2015 and Oct. 27, 2016).

10 U.S.C. § 950f(a) Establishment.--There is a court of record to be known as the "United States Court of Military Commission Review"

See In re Khadr , 823 F.3d 92, 98 (D.C. Cir. 2016) (stating the "Department has expressly represented that Judge Pollard may be removed by the President only for cause and not at will").

The other Article I Courts are United States Court of Appeals for the Armed Forces, United States Tax Court, United States Court of Appeals for Veterans Claims, and United States Court of Federal Claims.

The Chief Judge recommended conforming amendments to Section 109(10) of the Ethics in Government Act of 1978 (5 U.S.C. App.), Sections 202(e)(2) and 6001(4) of title 18, United States Code, and Section 1043(6) of title 26, United States Code.

See DOD Standard of Conflicts Office (SOCO) website, About SOCO , http://ogc.osd.mil/defense_ethics/about.html.

See, e.g., 10 U.S.C. § 950f(b)(5)(B).

R.M.C. 109(a) makes the Judge Advocate General for each service responsible for the professional supervision and discipline of its military judges who are assigned and appointed to the CMCR. Our judges who are military officers, therefore, look to their respective services for ethical advice. However, it also would be better if all CMCR judges relied upon the same agency independent of the Department to seek ethical advice and support related to their service on this Court.

We leave for another day whether there are circumstances in which it would be inappropriate for a CMCR judge to seek ethical advice from SOCO.

The phrase "for whatever investigation and action, if any, [SOCO] deemed appropriate" in the Referral does not change this. See Referral, App. A. It is standard terminology used to avoid suggesting a pre-determined outcome. It does not confer on SOCO any powers that it otherwise does not have.

To resolve Ali's motions, we need not, and should not, address whether CMCR judges are principal or inferior officers for Appointments Clause purposes. See Camreta v. Greene , 563 U.S. 692, 705, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011) ("judicial restraint requires that courts avoid reaching constitutional questions in advance of a necessity to decide them").